**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNA CRISTINA C.,[1]<br><br>            Plaintiff,<br><br>     v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>            Defendant. | Case No. 5:19-cv-00988-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

**BACKGROUND**

On October 30, 2012, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning September

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

22, 2009. (Administrative Record ("AR") 593-602.) Her applications were denied initially and upon reconsideration. (AR 409-422.) Plaintiff appeared with counsel at hearings conducted before an ALJ on November 10, 2014, March 11, 2015, and July 31, 2015. At the hearings, Plaintiff, a medical expert ("ME"), and a vocational expert ("VE") testified. (AR 318-362.)

On August 20, 2015, the ALJ issued a decision finding that Plaintiff suffered from the following medically severe impairments: degenerative disc disease of the lumbar spine, stenosis, and stress incontinence. (AR 302.) The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that she could occasionally bend, kneel, stoop, crouch, and crawl and she required access to a restroom. (AR 304-310.) After finding that Plaintiff's RFC permitted her to perform her past relevant work as a teller supervisor, the ALJ concluded that Plaintiff was not disabled at any time from September 22, 2009 through the date of the ALJ's decision. (AR 310-311.) The Appeals Council denied review. (AR 1-7.)

Thereafter, Plaintiff filed an action in this Court seeking review of the decision. Case No. 5:17-cv-00970-AFM. The Court found that the ALJ had failed to provide legally sufficient reasons for rejecting the opinion of Plaintiff's treating physician, Suk Park, M.D., and remanded the matter to the Commissioner for further proceedings. Following the remand, another hearing was conducted, at which Plaintiff, a VE, and an ME testified. (AR 2927-2983.)

On January 29, 2019, the ALJ issued a partially favorable decision. The ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease/degenerative joint disease of the lumbar spine; osteoarthritis of the left hand; osteoarthritis of the bilateral knees; and stress incontinence. (AR 2906.) The ALJ concluded that Plaintiff's impairments did not meet or equal any listed impairment. (AR 2909.) Further, the ALJ determined that, prior to June 1, 2016,

2

Plaintiff retained the residual functional capacity ("RFC") to lift/carry, and push/pull 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; frequent fingering bilaterally; frequent pushing/pulling with lower extremities; occasional postures other than crawling; frequent work with hazards; and must have ready access to a restroom. (AR 2909.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform her past relevant work as a teller supervisor and, therefore, was not disabled prior to June 1, 2016. (AR 2914-2915.) The ALJ determined that beginning June 1, 2016, and based upon Plaintiff's right knee impairment, Plaintiff's RFC was further restricted to standing/walking no more than four hours in an eight-hour day. Relying on the testimony of the VE, the ALJ determined Plaintiff was not capable of returning to her past relevant work. (AR 2914-2916.) Applying the Medical-Vocational Guidelines, the ALJ concluded that Plaintiff was disabled as of June 1, 2016. (AR 2916.)

On March 31, 2019, the ALJ's decision became the final decision of the Commissioner.

## DISPUTED ISSUES

Whether the ALJ provided legally sufficient reasons for rejecting the opinion of Plaintiff's treating physician, Suk Park, M.D.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a

3

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I. Relevant Law

In determining a claimant's RFC, an ALJ must consider all relevant evidence of record, including medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see* 20 C.F.R. § 404.1527(b). Before rejecting the uncontradicted opinion of a treating or examining physician, an ALJ must provide clear and convincing reasons for doing so. *Hill v. Astrue*, 698 F.3d 1153, 1159-1160 (9th Cir. 2012); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Hill,* 698 F.3d at 1160 (quoting *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1298-1299 (9th Cir. 1999)). An ALJ meets the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citations and internal quotation marks omitted).

### II. Medical Evidence[2]

In summarizing the medical record prior to June 1, 2016, the ALJ began by noting Plaintiff's history of degenerative disc disease/degenerative joint disease of the lumbar spine, osteoarthritis of the left hand, and osteoarthritis of the bilateral

---

[2] Because Plaintiff's claim involves only her physical impairments, the Court limits its summary to the medical evidence relevant to her claim.

4

knees. (AR 2910.) An X-ray of Plaintiff's lumbar spine in May 2013 revealed degenerative changes and "mild" retrolisthesis of L5 on S1. Otherwise, Plaintiff's lumbar spine demonstrated normal alignment and there was no compression fracture. (AR 753.) A March 2015 MRI of Plaintiff's lumbar spine revealed degenerative disc changes consistent with mild to moderate spinal canal stenosis at L5-S1, mild spinal canal stenosis at L4-5 and L3-4, and "very mild" retrolisthesis at L4-5. (AR 2235-2236.)[3] In March 2016, an X-ray of Plaintiff's knee revealed mild early degenerative changes and calcification of the medial collateral ligament. (AR 3421.)

The ALJ noted that the record contained positive findings. In particular, Plaintiff had, at times, demonstrated tenderness, pain, decreased range of motion, and spasm to the lumbar spine. In addition, while straight-leg raising tests were mostly negative (*see, e.g.,* AR 1500 (April 2010), 2012 (January 2015), 3173 (September 2015), 3196-3187 (October 2015), 3319 (December 2015)), the ALJ noted "rare" positive straight-leg raising tests (*see* AR 1526 (July 28, 2010), 1764 (July 2011), 2446 (March 2015)).[4] Further, treatment notes reflected that Plaintiff had effusion in the right knee and tenderness over the medial joint line and posteriorly with limited range of motion. (AR 2910; *see* AR 945, 972, 979, 1525.)

After acknowledging the foregoing positive findings, the ALJ stated that the record did not demonstrate sustained gait deficits that lasted for any continuous 12-month period. Instead, the ALJ remarked that the records "overwhelmingly described her ambulation/gait as normal." (AR 2911; *see* AR 1499-1500 (April 26, 2010), 1525 (July 28, 2010), 1786 (August 5, 2011), 2295 (February 2015), 2445 (March 2015),

---

[3] The MRI report itself includes two dates – February 26, 2015 and March 3, 2015. (AR 2235.) The Court uses March 2015 as shorthand.

[4] Plaintiff complains that the ALJ's decision fails to provide clear citations to the records or examinations to which his conclusions refer. (ECF No. 26 at 9.) It is true that the ALJ's method of citation – namely, string citations found at the end of a paragraph – is less than ideal and requires additional work by the reader. Nevertheless, reference to the pages of the record the ALJ identifies does reveal the basis for his decision. In addition, the ALJ cites to duplicate records. The Court has eliminated redundant citations.

5

3173 (September 2015), 3196 (October 2015).) The ALJ then addressed treatment notes from April 2010 to October 2015. Specifically, the ALJ cited records revealing that Plaintiff reported walking "a lot" in the two months prior to April 2010; she ambulated without difficulty; straight-leg raising was negative; she demonstrated good strength and coordination; and she performed normal toe, heel, and tandem gait despite reduced lumbar range of motion. (AR 2911; *see* AR 1499-1500, 1506-1507, 2012, 2295, 2445, 3173, 3196-3197, 3320.)

Next, the ALJ discussed Plaintiff's March 2013 consultative orthopedic examination by Payam Moazzaz, M.D. The examination revealed that Plaintiff had a reciprocal gait pattern with normal heel and toe walking. She exhibited mild tenderness to palpation in the paraspinal musculature near the lumbosacral junction, but no muscle spasm. Range of motion in the upper and lower extremities, including the knees, was normal. Range of motion of the spine was somewhat reduced, but straight-leg raising was negative bilaterally in both the seated and supine positions. Plaintiff's motor strength was 5/5, and both her sensations and reflexes were intact. An X-ray of the lumbar spine on that date showed no scoliosis, no evidence of fracture, and disc space narrowing at L5-S1 with vacuum disc phenomenon. An X-ray of Plaintiff's pelvis was unremarkable. Dr. Moazzaz diagnosed Plaintiff with L5-S1 degenerative disc disease and left hip arthralgia. (AR 2911; *see* AR 745-749.)

Dr. Moazzaz opined that Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday with normal breaks; perform postural activities occasionally; perform overhead activities on an unrestricted basis with full use of her hands for fine and gross manipulation; and did not require the use of an assistive ambulatory device. (AR 749.)

The ALJ observed that treatment for Plaintiff's musculoskeletal impairments was largely conservative prior to June 1, 2016. For example, he noted that Plaintiff

initially was provided with pain medication, exercises, and physical therapy. In addition, physical therapy records indicated that Plaintiff's rehabilitation potential was good, and she was progressing toward her goals. Although Plaintiff reported increased pain in August 2010, the pain was attributed to her "moving houses." Physical therapy records include notations that Plaintiff reported improvement in pain. (AR 787-788, 1530, 1541, 1545-1546, 1551, 1559.) The ALJ further noted that, in March 2013, Plaintiff reported that her treatment involved physical therapy, chiropractic care, and acupuncture. At that time, Plaintiff had not received injections of spinal surgical intervention. She took Tylenol for pain. (AR 745-746.) Plaintiff subsequently did receive injection therapy for her pain. (AR 2911; *see* AR 2576-2578 (April 2015).)

     Dr. Park's Opinion

In February 2015, Dr. Park completed a questionnaire in which he opined that Plaintiff could lift and carry on an occasional and frequent basis no more than 10 pounds; could sit for less than two hours in an eight-hour workday; could stand/walk for less than two hours in an eight-hour workday; could sit for ten minutes before being required to change position; could stand for five minutes before changing position; must walk around every five minutes for ten minutes; needed to lie down at unpredictable intervals every fifteen minutes during a work shift; could occasionally twist, stoop, crouch, and climb stairs and ladders; was "constantly" limited in her ability to reach, handle, finger, feel, push, and pull; should avoid even moderate exposure to extreme cold, heat, wetness, humidity, noise, fumes, and hazards, which would exacerbate her pain; and would miss more than three days a month of work due to her impairments. (AR 2230-2232.) In a letter dated March 12, 2015, Dr. Park wrote that Plaintiff suffered from multilevel lumbar spine arthritis and mild to moderate lumbar spinal stenosis and that "[t]hese conditions prevent her from working." (AR 2234.)

Dr. Kwock's testimony

John F. Kwock, M.D., an orthopedic surgeon, testified as a medical expert. Prior to his testimony, Dr. Kwock had reviewed the entire medical record. He stated that the record showed that Plaintiff suffered from degenerative disc and degenerative joint disease of the lumbar spine; mild osteoarthritis in the small joints of the left hand; mild early osteoarthritis in both knees; and is status post arthroscopy of the left knee. In Dr. Kwock's opinion, Plaintiff is able to perform work in the light exertional range – including the ability to stand/walk and sit for six hours in an eight-hour workday. In response to the ALJ's inquiry about Dr. Park's opinion, Dr. Kwock testified that he found no musculoskeletal evidence "that even comes close to supporting" the limitations opined by Dr. Park. Dr. Kwock addressed specific medical records, including Dr. Park's physical examinations as well as others, which showed normal motor strength, normal sensation and reflexes, and normal gait. He explained that all of the examinations from 2008 to 2017 were "either close to, if not, normal." Given that the objective evidence showed minimal degenerative changes, Dr. Kwock opined that the record did not support finding Plaintiff unable to perform light work. (AR 2934-2945, 4648-4649.)

### III. The ALJ's Decision

In assessing Plaintiff's RFC for the period prior to June 1, 2016, the ALJ stated that he relied heavily upon the opinion of Dr. Kwock. The ALJ found Dr. Kwok's opinion to be consistent with the evidence and observed that Dr. Kwock has a background in orthopedic surgery, so he possessed the relevant education, training, and experience to assess Plaintiff's particular impairments. Further, the ALJ noted that Dr. Kwock had experience testifying as an expert in Social Security Administration proceedings, and therefore he had knowledge of the relevant rules and regulations. The ALJ emphasized that Dr. Kwock was the only physician who had access to all of the medical evidence in the record and reviewed that evidence

before the hearing. Finally, the ALJ noted that Dr. Kwock's opinion was generally consistent with the opinion of the State agency medical consultant as well as the opinion of the consultative orthopedic examiner (Dr. Moazzaz), both of whom opined that Plaintiff could perform work in the light exertion range. (AR 2912.)

Nevertheless, the ALJ gave some weight to Plaintiff's subjective allegations of pain and stress incontinence issues, and imposed functional restrictions beyond those opined by Dr. Kwock, the State agency physician, and Dr. Moazzaz. Specifically, the ALJ further limited Plaintiff's postural activities and included a requirement that Plaintiff be provided ready access to a restroom. (AR 2912.)

The ALJ accorded little weight to Dr. Park's opinion. The ALJ recognized that that a treating physician's opinions are typically afforded greater weight, but concluded that Dr. Park's opinions were unsupported by, and inconsistent with, the weight of the medical evidence. Specifically, the ALJ found that the objective evidence prior to June 1, 2016 reflected only minimal degenerative joint disease that would not support the limitations assessed by Dr. Park. The ALJ pointed out that "nearly all physical examinations, including those conducted by Dr. Park, were close to normal with minimal changes on objective findings." (AR 2913.) For example, Dr. Park's examinations revealed normal gait without difficulty, normal motor strength, normal neurological findings, and negative straight-leg raising tests. Other evaluations similarly revealed 5/5 strength in the bilateral lower extremities, intact toe-heel walk, normal gait, and normal motor, sensory, and symmetrical reflexes in the upper and lower extremities. In addition, the ALJ noted that the diagnostic evidence prior to June 1, 2016, including X-ray results, showed minimal degenerative changes. (AR 2913.)

With respect to Dr. Park's March 2015 statement that Plaintiff's conditions prevented her from working, the ALJ noted that the opinion lacked any objective

clinical findings or other evidence supporting it. In addition, the ALJ stated that the opinion was on an issue reserved to the Commissioner. (AR 2913.)

### IV. Analysis

Because Dr. Park's opinion regarding Plaintiff's functional limitations was controverted by the opinions of Dr. Moazzaz, Dr. Kwok, and the State agency physician, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *See Orn*, 495 F.3d at 632.

As set forth above, the ALJ found Dr. Park's opinion was not supported by the objective medical evidence, which showed only minimal degenerative disease, and was inconsistent with both Dr. Park's physical examinations and with other evaluations. (AR 2913.)

An ALJ may properly reject a treating physician's opinion that is unsupported by clinical findings. *See Chaudhry v. Astrue,* 688 F.3d 661, 671 (9th Cir. 2012); *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009). Here, the ALJ pointed out the absence of significant clinical findings supporting Dr. Park's opinion. While Dr. Park indicated that he relied upon X-rays and MRI findings to support his opinion (AR 2231),[5] the ALJ noted that the X-ray and MRI results predating June 1, 2016 showed "very mild" to mild retrolisthesis at L4-L5 and L5 on S1, mild spinal canal stenosis at L4-5 and L3-4, and mild to moderate spinal canal stenosis at L5-S1. (*See* AR753, 2235-2236.) Given these mild to moderate clinical findings, the ALJ could properly reject Dr. Park's opinion as to Plaintiff's extreme limitations. *See Charles B. v. Berryhill*, 2019 WL 1014781, at *6 (C.D. Cal. Mar. 4, 2019) (ALJ properly rejected treating physician's opinion for lack of objective support where MRI showed small disc bulges, mild to moderate foraminal stenosis, but no central canal stenosis or root impingement); *Gonzalez v. Astrue*, 2013 WL 394415, at *7-8

---

[5] Plaintiff points out that, to the question, "What medical findings support the limitations described above," Dr. Park not only identified X-ray and MRI findings, but also wrote "referrals to physical medicine, physical therapy..." (AR 2231.) It is unclear how a referral to physical therapy constitutes a medical "finding" supporting functional limitations.

10

(E.D. Cal. Jan. 30, 2013) (ALJ properly rejected treating physician's opinion for lack of objective support where MRI and CT scans revealed "mild stenosis"); *Coelho v. Astrue*, 2011 WL 3501734, at *6 (N.D. Cal. Aug. 10, 2011) (ALJ met his burden of providing a specific, legitimate reason to reject the treating physicians' opinions for lack of supporting objective evidence where evidence of cervical spine condition included an MRI showing stenosis, disc narrowing, desiccation, and posterior disc bulging, but normal cord signal), *aff'd*, *Coelho v. Colvin*, 525 F. App'x 637 (9th Cir. 2013).

Plaintiff complains that in weighing Dr. Park's opinion, the ALJ failed to consider an October 2015 MRI showing, among other things, grade 1 retrolisthesis of L5 on S1 with "moderate degenerative disc disease and disc space height loss. Diffuse disc bulge combines with moderate to severe bilateral facet arthropathy/hypertrophy changes to result in moderate left and mild right neural foraminal stenosis." (ECF No. 26 at 11-12; AR 25-27.) Dr. Park, however, rendered his opinion more than half a year before the October 31, 2015 MRI findings. The ALJ was not required to consider evidence not in existence at the time Dr. Park rendered his opinion as evidence supporting that opinion. In sum, the ALJ did not err in concluding that Dr. Park's opinion lacked objective evidence to support it.

The ALJ also concluded that Dr. Park's opinion was not supported by either his treatment notes or the medical record as a whole. As set forth above, Plaintiff's physical examinations, including those by Dr. Park, were predominantly normal with minimal positive findings. In particular, Plaintiff's motor strength, reflexes, and sensation were consistently normal; her gait was almost always normal; and straight-leg raising was, with few exceptions, most often negative.

Plaintiff argues that the ALJ ignored medical evidence containing positive findings. In particular, Plaintiff points to treatment notes from May to August 2008 in which Plaintiff exhibited tenderness, pain, decreased range of motion, and one

positive straight-leg raising test. (ECF No. 26 at 9-10, citing AR 945, 950 (May 10, 2008), 969 (May 28, 2008), 979 (July 2, 2008), 1011 (August 13, 2008).)[6] Plaintiff also points to other records, including a treatment note from September 2013 revealing point tenderness in the sciatic nerve (AR 755); a January 2014 examination revealing left hip positive points and decreased range of motion (AR 788); a check mark in a note from March 2014 indicating Plaintiff's lower back and spine were "abnormal" without further specification (AR 789); a notation from August 2014 indicating Plaintiff exhibited pain on range of motion of the lower back (AR 787); and examinations in 2010, 2011, and 2015, which Plaintiff contends include positive straight-leg raising. (ECF No. 26 at 10, 12 (citing AR 1526, 1725, 1764, 2456, 2477).)[7]

Plaintiff's argument is unpersuasive. Plaintiff is correct that an ALJ may not reject a physician's opinion by selectively relying on some evidence while ignoring other evidence. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-1208 (9th Cir. 2001). At the same time, an ALJ is not required to "discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Here, the ALJ accurately summarized the medical evidence and none of the evidence cited by Plaintiff undermines the ALJ's characterization of the record. Rather, it is substantively the same as the evidence that the ALJ discussed in detail, including identical physical examination findings. Contrary to Plaintiff's suggestion that the ALJ ignored the positive findings, the ALJ explicitly acknowledged and

---

[6] The Court notes that the positive findings from 2008 were made more than a year prior to Plaintiff's alleged date of onset.

[7] Of the five records cited by Plaintiff, only three reveal positive straight-leg raising on the left and negative straight-leg raising on the right. (AR 1526 (July 2010), 1764 (July 2011), 2456 (March 2015).) One record is not a positive clinical finding, but rather a physical therapy progress note assigning Plaintiff various exercises, one of which is "SLR in prone x 10 x 2." (AR 1725.) The last is a record from Plaintiff's April 2015 joint injection, which did not include a physical examination or clinical finding, but instead recites the positive left straight-leg raising finding from the March 2015 examination. (AR 2477.)

12

addressed findings such as those Plaintiff points to, and in fact, cited some of the exact same treatment notes. (*See* AR 2911, citing 945, 972, 979.)[8] Moreover, the ALJ did not conclude that there was *no* evidence of a musculoskeletal impairment. Rather, he concluded that the quantity and type of positive findings such as the ones Plaintiff points to – i.e., tenderness, spasm, reduced range of motion, and sporadic positive straight-leg raising tests – did not support the extreme limitations opined by Dr. Park, such as an inability to occasionally lift/carry ten pounds and an inability to stand, walk, or sit for even two hours in an eight-hour day.

Next, Plaintiff objects to the ALJ's citations to records in which Plaintiff sought treatment for conditions other than her back impairment, such as diabetes or uterine bleeding. Although not entirely clear, Plaintiff appears to contend that the ALJ could not properly consider medical findings contained in those records when evaluating her back impairment. (ECF No. 26 at 11.) Plaintiff, however, cites no authority for such a proposition, and the Court is aware of none.

Plaintiff argues that the ALJ improperly rejected Dr. Park's March 12, 2015 opinion on the ground that it was on an issue reserved to the Commissioner. (ECF No. 26 at 13.) Dr. Park's opinion is found in a letter that states in full:

> To whom it may concern:
>
> [Plaintiff] suffers from multilevel lumbar spine arthritis and mild-moderate lumbar spinal stenosis. See MRI report. These conditions prevent her from working.

(AR 2234.)

The regulations provide that a treating physician's opinion on the ultimate issue of disability is not entitled to controlling weight, because statements by a medical source that a claimant is "disabled" or "unable to work" are not medical

---

[8] The administrative record includes multiple copies or versions of the same treatment notes. While Plaintiff cites to page 969, the ALJ's citation to page 972 of the record refers to the treatment notes from May 28, 2008.

13

opinions. 20 C.F.R. §§ 404.1527(e), 416.927(e); *see Tristan v. Berryhill*, 752 F. App'x 516, 517 (9th Cir. 2019) ("The ALJ properly rejected Dr. Posner's opinion that Tristan was unable to work as an opinion on an issue reserved to the Commissioner."). Nevertheless, while the ALJ is not bound by a treating physician's opinion on the ultimate issue of disability, he or she still cannot reject it without presenting legally sufficient reasons for doing so. *See Hill*, 698 F.3d at 1159-1160; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ met that obligation here by providing the specific and legitimate reasons for rejecting Dr. Park's opinion discussed above. The March 2015 letter does not include any additional objective evidence that would alter the Court's conclusion.

Finally, relying on *Trevizo*, 862 F.3d at 998, Plaintiff argues that reversal is warranted because the ALJ failed to consider the regulatory factors set forth in 20 C.F.R. §§404.1527, 416.927. (ECF No. 26 at 13-14.) While an ALJ must consider the regulatory factors, there is no requirement that an ALJ explicitly discuss the factors in his/her decision. *See Kelly v. Berryhill*, 732 F. App'x 558, 562-563 n.4 (9th Cir. May 1, 2018) (clarifying *Trevizo*, 871 F.3d at 676); *Huddleston v. Berryhill*, 2018 WL 2670588, at *10 (C.D. Cal. May 31, 2018) (*Trevizo* holds that an ALJ must "consider" factors when evaluating a treating physician's opinion, but courts "have declined to read *Trevizo* as requiring that each factor be explicitly enumerated in the ALJ decision."). Two of the regulatory factors are supportability and consistency with the record, both of which the ALJ here expressly discussed. *See* 20 C.F.R. § 416.927. In addition, the ALJ acknowledged the length of the treating relationship and recognized that Dr. Park was a treating physician. Thus, the record confirms that the ALJ's assessment of Dr. Park's opinion was consistent with the regulations. *See Amanda R. v. Saul,* 2020 WL 2218769, at *5 (C.D. Cal. May 7, 2020) (ALJ's assessment complied with Trevizo where ALJ "twice acknowledged [physician]'s status as Plaintiff's primary care treating physician" and addressed the "supportability

and consistency of [physician's] opinion compared to the medical record as a whole"); *Susan O. v. Comm'r of Soc. Sec.*, 2019 WL 1777727, at *5 (W.D. Wash. Apr. 23, 2019) (ALJ's assessment complied with regulations and *Trevizo* where ALJ considered two of the regulatory factors – namely, supportability and consistency with the record).

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 7/31/2020

*/s/ Alex MacKinnon*
_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE